Janice M. Bellucci, Esq., SBN 108911
LAW OFFICE OF JANICE M. BELLUCCI
475 Washington Boulevard
Marina Del Rey, California 90292
Tel:  (805) 896-7854
Fax:  (805) 349-8872
JMBellucci@aol.com

Attorney for Plaintiffs
FRANK LINDSAY and KIRK CLYMER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| FRANK LINDSAY, an individual; and KIRK CLYMER, an individual,<br><br>            Plaintiffs,<br><br>     vs.<br><br>CITY OF BELL GARDENS, an incorporated California Municipality; and DOES 1 to 10, inclusive,<br><br>            Defendants. | Case No.:<br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**[42 U.S.C. Section 1983]** |

## INTRODUCTION

1.  This civil rights action challenges the entirety of Title 17, Chapter 17.28 of the City of Bell Gardens Municipal Code (the "Bell Gardens Residency Restrictions" or "the Ordinance") in that, on their face and as applied, the Bell Gardens Residency Restrictions violate the Fifth and Fourteenth Amendments to the United States Constitution, the Ex Post Facto Clause of the United States Constitution, and are unconstitutionally vague and overbroad as more specifically alleged herein.

## JURISDICTION AND VENUE

2.  This court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331, 1343(a), and 2201, as well as 42 U.S.C. Section 1983.

3. Under 28 U.S.C. Section 1391(b), venue is proper in this Federal district because defendant is a municipality in this district and the events giving rise to the claims have occurred and continue to occur in this district.

## PARTIES

4. Plaintiff Frank Lindsay ("Lindsay") is and at all times material to this action was a resident of the State of California as well as a citizen of the United States. Lindsay is required to register as a sex offender pursuant to Section 290 of the California Penal Code due to a conviction in 1979 and is not on parole or probation. Lindsay resides in geographic proximity to the City of Bell Gardens and conducts business within and near the City of Bell Gardens. Lindsay intends to travel to the City of Bell Gardens and desires to establish a lawful residence in that city, including by spending nights in a hotel or motel with in the City while on business or while visiting local attractions and venues, and would in fact reside in the City, but is prohibited from doing so by the Ordinance, including but not limited to its penalties, which include incarceration and/or fines for each and every day during which a violation occurs.

5. Plaintiff Kirk Clymer ("Clymer") is and at all times material to this action was a resident of the State of California as well as a citizen of the United States. Clymer is required to register as a sex offender pursuant to Section 290 of the California Penal Code due to a Federal conviction in 2011 involving a child, and is currently serving a five-year term of Federal probation. Clymer resides in geographic proximity to the City of Bell Gardens and is in search of a permanent residence. Clymer would establish a residence in the City, but is prohibited from doing so by the Ordinance, including but not limited to its penalties, which include incarceration and/or fines for each and every day during which a violation occurs.

6. Plaintiffs Lindsay and Clymer are collectively referred to herein as "Plaintiffs."

7. The City of Bell Gardens (the "City" or "Defendant") is an incorporated city located in Los Angeles County, California. The City adopted the City Ordinances at issue here through the five-member Bell Gardens City Council and enforces such ordinances through the Police Department of the City of Bell Gardens.

8. The true names and capacities of Defendants sued as Does 1 through 10 are unknown to Plaintiffs, who therefore sue such Defendants by fictitious names. Plaintiffs will seek leave to amend this Complaint, if necessary, to reflect the true names once they have been ascertained.

9. The City and Does 1 through 10 are collectively referred to herein as "Defendants."

**FACTS**

10. The City Council of Bell Gardens adopted Ordinance 828 in 2009, which was subsequently codified as City of Bell Gardens Municipal Code ("BGMC"), Title 17, Chapter 17.28, Sections 17.28.010 through 17.28.200, entitled "Sex Offender Residency Restrictions." This Ordinance went into effect in or around October 2009.

11. As enacted, the Ordinance prohibits sex offenders (hereinafter "Registrants") from being a "temporary resident or a permanent resident" within a "Residency Exclusion Zone." Ordinance § 17.28.060(A). As described herein, the City's definition of "Residency Exclusion Zone" is among the most expansive of any municipality in this jurisdiction. The Ordinance therefore imposes the most burdensome and extreme residency restrictions upon Registrants in the entire State of California.

12. The Ordinance defines "Residency Exclusion Zone" as the area "within 2,640 feet [i.e., one-half mile] of any sensitive use site, as defined by BGMC 17.28.020." Ordinance § 17.28.060(A). As defined by the Ordinance, a "Sensitive use Site" is any of among one dozen broadly described public or privately owned facilities, or types of facilities, some of which are not defined in the Ordinance, to wit:

a. "<u>Amusement Arcade</u>." The Ordinance does not define the term "Amusement Arcade."

b. "<u>Child Care Center</u>," defined as "(a) A day care center, other than an adult day care center; (b) A child care and development facility, as defined by Education Code Section 8208; (c) Facilities that provide nonmedical care and supervision of children, including infants, toddlers, preschoolers, and school-age children for a period of less than 24 hours consecutively and are required to be licensed by the California State Department of Social Services; (d) A children's home; (e) A private institution for children; and/or; (f) A special boarding home for children.

c. "<u>Children's retail store</u>," defined as "establishments or places of business dedicating at least 80 percent of floor space to consumer items directed at children . . . ."

d. "<u>Community center or cultural center</u>," defined as "multipurpose meeting and recreational facilities typically consisting of one or more meeting or multipurpose rooms, kitchen and/or outdoor barbecue facilities, that are available for use by various group for such activities as meetings, parties, receptions, and dances, i.e., a rental banquet hall."

e. "<u>Internet cafe</u>." The Ordinance does not define the term "Internet cafe."

f. "<u>Nontraditional school</u>," defined as "(a) A public or private preschool; (b) A Montessori School; (c) A home school . . . and/or (d) A school approved by the State of California as a charter school."

g. "<u>Studio</u>," defined as "small-scale facilities that typically provide for the teaching or tutoring of children including, but not limited to, the arts; music, drama, production rehearsal; dance instruction; photography instruction, and the processing of photographs produced by users of studio facilities; martial

arts training; or gymnastics instruction.  This definition does not include larger facilities, such as a learning center."

h. "<u>Traditional school</u>," defined as "(a) A private school or educational institution that provides education for grades kindergarten through the 12th grade and are not affiliated with a local school district; (b) A public school or educational institution providing instruction to kindergarten through the 12th grade; and/or (c) A community college, trade or vocational school, public or private college, university or professional school granting associate arts degrees, certificates, undergraduate, or graduate degrees."

i. "<u>Tutoring center or learning center</u>," defined as "(a) A location at which a public or private organization offers regularly scheduled tutoring and/or education instruction to children for purposes of supplementing the regular school instruction of the children; and/or (B) Establishments that provide for the tutoring of school-aged children in general or specific academic subjects on an individual basis or in groups. . . ."

j. "<u>Video game arcade</u>," defined as "(a) Establishments frequented by children that provide more than five video or electronic games, including computer games that require coins, tokens, or any other form of payment to play; and/or (b) Any establishment frequented by children providing amusement facilities which include, but are not limited to, pinball machines, shooting galleries, electronic or video type skill games."

k. "<u>Youth camp</u>."  The Ordinance does not define the term "Youth camp."

l. "<u>Youth center</u>," defined as "a location at which a public or private organization provides mentorship, educational and/or recreational programs to children on a regularly scheduled basis . . . . [such as] Boys and Girls Club facilities, YMCA facilities, and similar locations."

Ordinance § 17.28.020.

---
5
**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

13. The Ordinance defines a "Sex Offender" as "any person for whom registration would be required for crimes committed by such persons pursuant to . . . California Penal Code Section 290 et seq., regardless of whether that person is on parole or probation." Ordinance § 17.28.020. See also *id*. § 17.28.010(C).

14. The Ordinance defines "permanent resident" as "any person who, as of a given date, obtained the right to occupy a dwelling or trailer coach for more than 30 consecutive days." Ordinance § 17.28.020.

15. The Ordinance defines "temporary resident" as "any person who, for a period of 30 days or less, obtained the right to occupy a dwelling or trailer coach." Ordinance § 17.28.020.

16. The Ordinance defines "Child," "children," or "youth" as "a person or persons under the age of 18 years of age." Ordinance § 17.28.020.

17. For the purpose of defining the size of the Residency Exclusion Zone, i.e. the area comprising a one-half mile (2,640-foot) radius surrounding the boundaries of each Sensitive Use Site within which the Ordinance prohibits Registrants from residing as a Permanent Resident or a Temporary Resident, the Ordinance specifies that the boundaries of the Sensitive Use Site are the "legal boundary of the parcel or parcels occupied by the sensitive use site, whether such site occupies the entire parcel or any portion thereof." Ordinance §§ 17.28.020; 17.28.070. Accordingly, the property boundary of a large shopping mall with dozens of retail units that do not cater to children and a footprint of many acres will nevertheless define the boundaries of a Sensitive Use Site (and, by extension, a Residency Exclusion Zone) if just one retail unit is occupied by a "Children's retail store" or other Sensitive Use Site listed in the Ordinance.

18. On information and belief, the City's total area is approximately 2.49 square miles. On information and belief, there are several dozen facilities that qualify as Sensitive Use Sites within the City's total area of 2.49 square miles, including more than

...

twenty-four (24) "parks" and "community centers," seven public schools, at least twenty (20) "day care centers," and numerous private business that cater to children.

19. The Ordinance declares the area within a one-half mile (2,640-foot) radius of the legal boundary of each Sensitive Use Site to be a Residency Exclusion Zone within which Registrants may not reside. Thus, <u>the size of the Residency Exclusion Zone surrounding each individual "Sensitive Use Site" is at least 0.78 square miles, or one third of the total area of the City</u>. Therefore, the aggregate size of all "Residency Exclusion Zones" established by the Ordinance is well over twenty (20) square miles, and exceeds the total size of the City of Bell Gardens by a factor of ten (10).

20. In addition to prohibiting Registrants from residing as a Permanent Resident or a Temporary Resident in a Residency Exclusion Zone, the Ordinance also prohibits Sex Offenders from being a Permanent Resident or a Temporary Resident in a "One-Family Dwelling," a "Duplex," "Trailer Coach," "Mobile Home," or in a room within a "Hotel/Motel," "Group or Special Living Site," "apartment house," "boarding house," "dormitory," "granny flat," "group home," or "guest house" that "is already occupied by a sex offender, unless those persons are legally related by blood, marriage or adoption." Ordinance §§ 17.28.060(B)(1-2), (3), (6), (8-10).

21. The Ordinance also prohibits Sex Offenders from being a Permanent Resident in a "Hotel/Motel," "Group or Special Living Site," "apartment house," "boarding house," "dormitory," "granny flat," "group home," or "guest house," when a "separate and distinct room or unit" within such facility is "already occupied by a sex offender as a permanent resident." Ordinance. § 17.28.060(B)(5), (7).

22. The Ordinance also prohibits Sex Offenders from being a Permanent Resident or a Temporary Resident in a "Multiple Dwelling" or a "Mobile Home Park" when another dwelling in that facility is already occupied by a Sex Offender, "unless those persons are legally related by blood, marriage, or adoption." Ordinance § 17.28.060(B)(2), (11).

23. The Ordinance does not define "One-Family Dwelling," "Multiple Dwelling," "Duplex," "Trailer Coach," "Mobile Home," "Mobile Home Park," "Multiple Dwelling," "Hotel/Motel," "Group or Special Living Site," "apartment house," "boarding house," "dormitory," "granny flat," "group home," or "guest house."

24. The Ordinance also prohibits "Responsible Parties" from "knowingly" renting any room or unit to a Sex Offender when that Registrant's residency would violate the Ordinance, and further provides that no "Responsible Party" shall "actively and knowingly assist a sex offender's continued violation of the provisions of this chapter." See Ordinance § 17.28.100. The Ordinance defines "Responsible Party" as "the property owner and/or owner's authorized agent." *Id*. § 17.28.020.

25. On information and belief, and based on documents published by the City, virtually all of the affordable residential property in the City is included within the Bell Gardens Residency Restrictions. On information and belief, and based on documents published by the City, the portions of the City left untouched by the Bell Gardens Residency Restrictions are generally zoned for commercial use, industrial use, or for some other nonresidential use, and are therefore not available for housing.

26. Upon information and belief, the housing left available to Registrants under the Bell Gardens Residency Restrictions is neither available nor affordable. In *In re Taylor*, the California Supreme Court considered $850 per month to be the maximum monthly rate for "affordable" housing in the context of sex offender residency restrictions. 60 Cal. 4th 1019, 1030 (2015). Upon information and belief, the median gross monthly rent in Bell Gardens exceeds $1,100.[1] Therefore, in order to comply with the Bell Gardens Residency Restrictions, Registrants cannot lawfully "reside" within the City of Bell Gardens because there is no affordable residential real estate available to them.

---

[1] http://www.city-data.com/city/Bell-Gardens-California.html#ixzz3uPz6o3s2.

27. On information and belief, the Bell Gardens Residency Restrictions are at least as restrictive, if not more restrictive, than the residency restrictions ruled unconstitutional by the *Taylor* Court. For example, upon information and belief, the City of Bell Gardens' population density exceeds 17,000 persons per square mile.[2] By comparison, the population density of San Diego County, California, which was considered by the *Taylor* court, is 680 persons per square mile.[3] The Bell Gardens Residency Restrictions, therefore, have a significantly greater impact on the Registrant population than the residency restrictions struck down in *Taylor*.

28. The penalties for any violation of the Ordinance are significant and include "a misdemeanor publishable by a fine of up to $1,000.00 or by confinement in the county jail for up to six months, or both such fine and confinement," as well as the attorneys' fees and costs of enforcement. Ordinance § 17.28.030(A), (D). The Bell Gardens Residency Restrictions further provide that "<u>A person is guilty of a separate offense for each and every day during which a violation occurs</u>." *Id.* § 17.28.030(A) (emphasis added).

29. By definition, the Bell Gardens Residency Restrictions do not apply to anyone not required to register as a sex offender pursuant to Penal Code section 290.

30. Furthermore, the Bell Gardens Residency Restrictions do not apply to Registrants who: (a) established a residence before the effective date of the Ordinance; (b) are children; (c) "are exercising their First Amendment Rights protected by the United States Constitution," or who (d) "are confined to and reside at a prison or mental health facility." See Ordinance §§ 17.28.130; 17.28.200(A). Accordingly, Registrants who have maintained the same residence since the effective date of the Bell Gardens Residency Restrictions are not subject to the Ordinance. However, a Registrant who

---

[2] http://quickfacts.census.gov/qfd/states/06/0604996.html.
[3] See http://quickfacts.census.gov/qfd/states/06/06073.html.

seeks to move from his/her original residence to a different residence within the City is subject to the Bell Gardens Residency Restrictions.

31. The Ordinance also explicitly applies to "transient" Registrants who lack a permanent place of residence, and will prohibit such Registrants from performing "everyday life tasks at [any] location, such as eating, sleeping, cooking, bathing, or personal care," if that location is within a Residency Exclusion Zone. See Ordinance § 17.28.060(C)(7).

32. Plaintiffs currently reside within geographic proximity to the City of Bell Gardens and wish to reside within that city, and would reside in the City if not for the Bell Gardens Residency Restrictions.

33. Plaintiff Lindsay conducts business in and around the City, and also visits Los Angeles County for recreational purposes. Plaintiff Lindsay therefore desires to reside in the City, including for certain nights as a temporary resident in a hotel or motel for the purpose of conducting business and visiting local attractions and venues, and would in fact reside in the City, but there is no location where Plaintiff Lindsay can lawfully reside that is both available and affordable.

34. Plaintiff Clymer is in search of a permanent residence and desires to establish a residence in the City as a permanent resident, and would in fact reside in the City but for the Bell Gardens Residency Restrictions. Plaintiff Clymer also visits Los Angeles County for recreational purposes, and desires to reside in the City for certain nights as a temporary resident in a hotel or motel. However, no location is available in the City where Plaintiff Clymer can lawfully reside that is both available and affordable.

35. Because the City of Bell Gardens continues to enforce the Bell Gardens Residency Restrictions in a manner that prohibits Plaintiffs and all Registrants who currently reside outside of Bell Gardens from acquiring a temporary or a permanent residence in Bell Gardens, the Bell Gardens Residency Restrictions accomplish the

unconstitutional goal of banishment, do not serve any legitimate government purpose, and are not appropriately tailored or related to any professed or lawful purpose.

36. Because the City of Bell Gardens continues to enforce the Bell Gardens Residency Restrictions in a manner that prohibits Registrants who already reside within Bell Gardens from moving to a new residence within that city, the Bell Gardens Residency Restrictions accomplish the unconstitutional goal of banishment, do not serve any legitimate government purpose, and are not appropriately tailored or related to any professed or lawful purpose.

37. California's Proposition 83, also known as "Jessica's Law" (effective November 6, 2006), as codified in subsections (b) and (c) of California Penal Code Section 3003.5, authorizes local governments to enact ordinances that further restrict the residency of any Registrant provided they are consistent with the constitutions of the United States and the State of California. See California Penal Code § 3003.5 (c). However, the California Supreme Court has ruled that residency restrictions may not be imposed upon sex offenders in a manner that deprives them of their constitutional rights and liberty interests, including their right to be free from arbitrary, oppressive, and unreasonable laws that bear no rational relationship to the state's goal of protecting residents. *In re Taylor*, 60 Cal. 4th 1019, 1042 (2015).

38. The Bell Gardens Residency Restrictions subject Registrants in the City to arbitrary, oppressive, and unreasonable governmental action in that they are blanket proscriptions applied to all affected Registrants without regard to the particularized circumstance of each individual or any rational relation to public safety. See *Taylor*, 60 Cal. 4th at 1042. For example, the Ordinance's definition of "Sensitive Use Sites" includes several facilities that do not cater to children, and/or facilities that children cannot reasonably be expected to visit regularly, if ever, including universities that offer graduate degrees, trade and vocational schools, and community centers and private

businesses that offer goods and services to the general public.  See, e.g., Ordinance § 17.28.020(4), (7), (8)(c).

39.     The Bell Gardens Residency Restrictions bear no rational relationship to any legitimate governmental purpose in that they contradict and hamper the objectives of Jessica's Law; fail to protect the public; and deprive Registrants of stable homes, family support, social and medical services, and other means necessary to live productive, law-abiding lives.  See *Taylor*, 60 Cal. 4th at 1042 (Blanket enforcement of residency restrictions "cannot survive rational basis scrutiny because it has hampered efforts to monitor, supervise, and rehabilitate [Registrants] in the interests of public safety, and as such, bears no rational relationship to advancing the state's legitimate goal of protecting children . . . .").  See also *Doe v. City of Lynn*, SJC-11822, 2015 Mass. LEXIS 620, at *18 & n.15 (Aug. 28, 2015) (As a supervised and stable home has been recognized as a factor that minimizes the sex offender's risk of reoffense, th[e] disruption [imposed by residency restrictions] is inconsistent with the Legislature's goal of protecting the public." (citing *In re Taylor*, 60 Cal. 4th 1019 (2015)).  This consensus is also manifested by the very agency charged with setting sex offender policy in California.  See Generally CALIFORNIA SEX OFFENDER MANAGEMENT BOARD, HOMELESSNESS AMONG CALIFORNIA'S REGISTERED OFFENDERS – AN UPDATE (Aug. 2011), at 26 ("CONCLUSIONS.  Based on all that is known about sex offender recidivism and the nature of most sex offenses involving children, there is no evidence that residency restrictions are related to preventing or deterring sex crimes against children.  To the contrary, the evidence strongly suggests that residency restrictions are likely to have the unintended effect of increasing the likelihood of sexual re-offense.").[4]

40.     Defendant has expended, is expending, and/or will expend public funds on enforcing, preparing to enforce, and/or attempting to enforce the Bell Gardens Residency Restrictions.  Defendant has a mandatory duty to refrain from expending public funds on

---

[4] http://www.casomb.org/docs/Residence_Paper_Final.pdf.

enforcing, preparing to enforce, and/or attempting to enforce the Bell Gardens Residency Restrictions because they are invalid and unconstitutional.

41. In addition, while the Bell Gardens Residency Restrictions do not by their terms impose burdens on persons other than Registrants, the Bell Gardens Residency Restrictions, as applied, may impose burdens upon family members of Registrants and upon others who reside with or wish to reside with Registrants, with the exceptions as previously defined.

42. Defendant lacks either a compelling or substantial legitimate governmental interest in restraining the civil liberties of Registrants in the manner expressly provided by the Bell Gardens Residency Restrictions.

43. In addition, the Bell Gardens Residency Restrictions are not the least restrictive means to further any compelling or substantial governmental interest, and specifically to protect children as the Bell Gardens Residency Restrictions purport.

44. Further, the Bell Gardens Residency Restrictions fail to pass constitutional muster because their restrictions are not sufficiently narrowly tailored to serve a legitimate government interest.

45. The Bell Gardens Residency Restrictions are overly broad and burdens substantially more constitutionally protected conduct than is necessary to further any legitimate governmental interest.

46. The Bell Gardens Residency Restrictions are vague and fail to provide sufficient notice of the conduct prohibited or allowed by Registrants so that they may conform their conduct to the requirements of the law and thereby prevent arbitrary and discriminatory enforcement.

47. Finally, the Bell Gardens Residency Restrictions are an arbitrary, politically motivated act imposed by a local government in response to popular sentiments, based upon misinformation, which seeks retribution against Registrants who constitute a socially outcast minority.  The Bell Gardens Residency Restrictions also lend themselves

to discriminatory enforcement as well as the suppression of the constitutional rights of Registrants as well as individuals who travel with them, including spouses and family members.

48. For the reasons stated above, the Bell Gardens Residency Restrictions are in violation of the First, Fifth and Fourteenth Amendments, the Ex Post Facto Clause of the United States Constitution, and are unconstitutionally vague.

## FIRST CLAIM

### (42 U.S.C. § 1983 – Fifth Amendment)

49. Plaintiffs re-allege paragraphs 1 through 48 of this Complaint as though fully set forth herein.

50. By leaving in place, enforcing, and/or threatening to enforce the Bell Gardens Residency Restrictions, Defendant deprives Plaintiffs and other Registrants of rights guaranteed by the Fifth Amendment of the United States Constitution, including the rights to life, liberty, property, familial association and due process of law. Defendant commits these unconstitutional acts under color of authority of law.

51. Continued enforcement or threats of enforcement of the Bell Gardens Residency Restrictions violate the rights of Plaintiffs and the rights of other Registrants, which are protected by the Fifth Amendment of the United States Constitution. Therefore, the Bell Gardens Residency Restrictions are void, both facially and as applied, and should be enjoined and their previous enforcement nullified. The injuries Plaintiffs are suffering as a result of the actions of Defendants, and each of them, are severe, irreparable, and ongoing. Immediate and permanent injunctive relief is necessary to halt and prevent further occurrence of these ongoing constitutional deprivations and infliction of irreparable harm.

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## SECOND CLAIM

### (28 U.S.C. §1983 – Fourteenth Amendment)

52. Plaintiffs re-allege paragraphs 1 through 51 of this Complaint as though fully set forth herein.

53. By leaving in place, enforcing, and/or threatening to enforce the Bell Gardens Residency Restrictions, Defendant deprives Plaintiffs and other Registrants of rights guaranteed by the Fourteenth Amendment of the United States Constitution, including the Substantive Due Process and Equal Protection Clauses as well as the rights to family autonomy, privileges and immunities, and the right to travel. Defendant commits these unconstitutional acts under color of authority of law.

54. Continued enforcement or threats of enforcement of the Bell Gardens Residency Restrictions violates the rights of Plaintiffs and other Registrants which are protected by the Fourteenth Amendment of the United States Constitution. Therefore, the Bell Gardens Residency Restrictions are void, both facially and as applied, and should be enjoined and their previous enforcement nullified. The injuries Plaintiffs are suffering as a result of the actions of Defendants, and each of them, are severe, irreparable, and ongoing. Immediate and permanent injunctive relief is necessary to halt and prevent further occurrence of these ongoing constitutional deprivations and infliction of irreparable harm.

## THIRD CLAIM

### (28 U.S.C. § 1983 – Ex Post Facto Clause)

55. Plaintiffs re-allege paragraphs 1 through 54 of this Complaint as though fully set forth herein.

56. By leaving in place, enforcing, and/or threatening to enforce the Bell Gardens Residency Restrictions, Defendant deprives Plaintiffs and other Registrants of rights guaranteed by the Ex Post Facto Clause of the United States Constitution. Defendant commits these unconstitutional acts under color of authority of law.

57. Continued enforcement or threats of enforcement of the Bell Gardens Residency Restrictions violates the rights of Plaintiffs and the rights of other Registrants which are protected by the Ex Post Facto Clause of the United States Constitution. Therefore, the Bell Gardens Residency Restrictions are void, both facially and as applied, and should be enjoined and their previous enforcement nullified. The injuries Plaintiffs are suffering as a result of the actions of Defendants, and each of them, are severe, irreparable, and ongoing. Immediate and permanent injunctive relief is necessary to halt and prevent further occurrence of these ongoing constitutional deprivations and infliction of irreparable harm.

## FOURTH CLAIM
## (28 U.S.C. § 1983 – Void for Vagueness)

58. Plaintiffs re-allege paragraphs 1 through 57 of this Complaint as though full set forth herein.

59. By leaving in place, enforcing, and/or threatening to enforce the Bell Gardens Residency Restrictions, Defendant unconstitutionally enforces an ordinance that deprives Plaintiffs and other Registrants of rights which are protected by the Void for Vagueness Doctrine extended into the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution. Therefore, the Bell Gardens Residency Restrictions are void, both facially and as applied, and should be enjoined and their previous enforcement nullified. The injuries Plaintiffs suffer as a result of the actions of Defendants, and each of them, are severe, irreparable, and ongoing. Immediate and permanent injunctive relief is necessary to halt and prevent further occurrence of these ongoing constitutional deprivations and infliction of irreparable harm.

## FIFTH CLAIM
## (28 U.S.C. §2201 – Declaratory Relief)

60. Plaintiffs re-allege paragraphs 1 through 59 of this Complaint as though fully set forth herein.

61. An actual controversy exists between Plaintiffs and Defendant regarding the constitutionality and enforceability of the Bell Gardens Residency Restrictions.

62. Plaintiffs are entitled to a declaration of their rights with regard to the Bell Gardens Residency Restrictions.

## PRAYER FOR RELIEF

Because of the actions alleged above, Plaintiffs seek judgment against Defendant as follows:

a. That Defendant be enjoined in perpetuity from enforcing Title 17, Chapter 17.28 of the City of Bell Gardens Municipal Code;

b. That Title 17, Chapter 17.28 of the City of Bell Gardens Municipal Code be declared null and void as unconstitutionally vague and in violation of the Fifth and Fourteenth Amendments of the United States Constitution, the Ex Post Facto Clause of the United States Constitution, and Article XI, Section 7 of the California Constitution;

c. That Plaintiffs recover from the Defendant, under 42 U.S.C. Section 1988, all of Plaintiffs' reasonable attorney's fees, costs and expenses of this litigation; and

d. That Plaintiffs recover such relief as the Court deems just and proper.

Dated:  December 16, 2015         LAW OFFICE JANICE M. BELLUCCI


                                  By:   /s/ *Janice M. Bellucci*
                                        Janice M. Bellucci
                                        Attorney for Plaintiffs

## VERIFICATION

I am a party to this action. The matters stated in the foregoing Complaint are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

Executed on December 16, 2015, at Grover Beach, California. I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

By: _____
Frank Lindsay, Plaintiff

**VERIFICATION**

I am a party to this action.  The matters stated in the foregoing Complaint are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

Executed on December 16, 2015 at Canyon Lake, California.  I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*Kirk Clymer*
KIRK CLYMER